United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRAEBEL COMMERCIAL SERVICES, INC.,<br><br>    Plaintiff,<br><br>v.<br><br>OYSTER POINT HOTELS, LLC, et al.,<br><br>    Defendants. | Case No. 18-cv-03425-KAW<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 22 |

Plaintiff Graebel Commercial Services, Inc. filed the instant case against Defendants Oyster Point Hotels, LLC ("Oyster Point"), OTO Development, LLC ("OTO"), Johnstone Moyer, Inc. ("Johnstone Moyer"), and Arch Insurance Company, asserting breach of contract. (First Amended Compl. ("FAC"), Dkt. No. 20.) On July 31, 2018, Defendants moved to dismiss the case on the ground that the contract at issue contained a forum selection clause that requires disputes to be resolved in San Mateo County. (Defs.' Mot. to Dismiss at 1, Dkt. No. 22.)

Having considered the papers filed by the parties, the relevant legal authority, and the arguments advanced by counsel at the September 20, 2018 hearing, the Court DENIES Defendant's motion to dismiss.

## I. BACKGROUND

On October 2, 2015, Defendant Oyster Point entered into the "Prime Contract" with Defendant Johnstone Moyer, in which Defendant Johnstone Moyer agreed to act as the general contractor for the construction of a Marriot hotel in South San Francisco ("Project"). (FAC ¶¶ 1, 17.) On January 12, 2017, Plaintiff and Defendant Johnson Moyer entered into a Construction Subcontract ("Subcontract"), in which Plaintiff would provide furniture, fixture, and equipment ("FF&E") installation services for the Project. (FAC ¶ 18.) The Subcontract stated that "[t]he

Subcontract Documents consist of (1) this agreement; (2) the Prime Contract, consisting of the Agreement between the Owner and Contractor, General Conditions, any Supplementary Conditions and the other Contract Documents enumerated in those documents," as well as other modifications and documents. (Compl., Exh. 2 ("Subcontract") § 1.1, Dkt. No. 1.) "All of these documents form and constitute the 'Subcontract', and are as fully a part of this Agreement as if attached to this Agreement or repeated herein." (Subcontract § 1.1.) Further, the Subcontract stated that "[t]he Prime contract is incorporated in this Subcontract by reference, insofar as it relates in any way, directly or indirectly, to the Work. Subcontractor agrees to be bound to Contractor in the same manner and to the same extent as Contractor is bound to Owner under the Prime Contract . . . ." (Subcontract § 1.2.) If, however, there is "any conflict between the various documents that constitute the Subcontract . . . the more stringent shall govern." (Subcontract § 1.3.)

With respect to dispute resolution, the Subcontract states that "[a]ny lawsuits arising out of or related to the Subcontract, the Project, or the Work, to the extent they are not subject to binding arbitration, must be brought in the county where the Project is located, unless otherwise provided under the Prime contract." (Subcontract § 6.6.) The Prime Contract, in turn, states: "For any Claim subject to, but not resolved by mediation pursuant to Section 15.2 of AIA Document A201-2007, the method of binding dispute resolution shall be as follows: . . . Litigation in a court of competent jurisdiction." (Compl., Exh. 1 ("Prime Contract") § 13.2.)

AIA Document A201-2007 ("AIA Document") defines a "Claim" as "a demand or assertion by one of the parties seeking, as a matter of right . . . payment of money . . . or other relief with respect to the terms of the Contract." (Sorenson Decl., Exh. Z ("AIA Document") § 15.1.1.) The AIA Document requires that if a claim is not resolved during a required "Cool Down Period," the parties would agree to mediating that claim in the county where the project is located. (AIA Document § 15.2.1.2.)

Plaintiff alleges that pursuant to the Subcontract, it commenced work on the Project on May 17, 2017. (FAC ¶ 38.) The Project, however, was not ready for Plaintiff to begin its FF&E installation services. (*Id.*) Plaintiff was also not provided with the conditions necessary to

2

complete its work. (FAC ¶¶ 40-48.) As a result, Plaintiff was delayed, causing Plaintiff to incur additional costs and expenses totaling $118,507.80. (FAC ¶¶ 49, 56-58.) Plaintiff also asserts that it is still owed $39,431 under the Subcontract. (FAC ¶ 58.)

Plaintiff then filed the instant suit against Defendants, bringing claims for: (1) intentional misrepresentation, (2) breach of contract, (3) breach of the implied covenant of good faith and fear dealing, (4) unfair competition, (5) recovery on payment bond, (6) common count: open book account, and (7) services rendered. (FAC at 22-27.) Defendants now move to dismiss under *forum non conveniens*.[1] On August 14, 2018, Plaintiff filed its opposition. (Plf.'s Opp'n, Dkt. No. 25.) On August 21, 2018, Defendants filed their reply. (Defs.' Reply, Dkt. No. 26.)

## II. LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 60 (2013). Federal law applies to the interpretation of a forum selection clause, and courts look to general principles of contract interpretation for guidance. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). "Contract terms are to be given their ordinary meaning, and when the terms of a contract are clear, the intent of the parties must be ascertained from the contract itself. Whenever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "The fact that the parties dispute a contract's meaning does not render the contract ambiguous; it is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Id.*

---

[1] Originally, Defendants also brought their motion to dismiss under Rule 12(b)(3), 28 U.S.C. § 1404, and 28 U.S.C. § 1406. (Defs.' Mot. to Dismiss at 1.) As Plaintiff pointed out, these are not appropriate grounds for dismissal. (Plf.'s Opp'n at 4-5, Dkt. No. 25.) In *Atlantic Marine Construction Co. v. United States District Court*, the Supreme Court explained that "a forum-selection clause does not render venue in a court 'wrong or improper' within the meaning of § 1406(a) or Rule 12(b)(3)." 571 U.S. 49, 59 (2013). Further, § 1404 applies only "for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the traditional remedy of outright dismissal with transfer." *Id.* at 60. Defendants do not seem to dispute this. (*See* Defs.' Reply at 6, Dkt. No. 26 (requesting dismissal under *forum non conveniens* only).)

3

**III. DISCUSSION**

The primary dispute between the parties is not whether the Subcontract's forum selection clause is enforceable, but whether the forum selection clause requires that the instant case be brought in San Mateo County. Again, the Subcontract states in relevant part that "[a]ny lawsuits arising out of or related to the Subcontract, the Project, or the Work, to the extent they are not subject to binding arbitration, must be brought in the county where the Project is located, *unless otherwise provided under the Prime contract*." (Subcontract § 6.6 (emphasis added).) The issue, therefore, is whether the Prime contract provides an alternative.

Based on the plain language, the Court finds that the Prime Contract provides an alternative to the Subcontract's requirement that a lawsuit be brought in the county where the Project is located. The Prime Contract states that any claim subject to but not resolved by mediation pursuant to the AIA Document shall be resolved by "[l]itigation in a court of competent jurisdiction." (Prime Contract § 13.2.) Per the AIA Document, a claim includes a demand for payment of money, and requires that such claims be mediated prior to litigation. (AIA Document §§ 15.1.1, 15.2.1.2.) Here, Plaintiff is demanding payment for services performed on the Project, and such claims are required to go through mediation pursuant to the AIA Document. Under the Prime Contract, Plaintiff's claim may be brought in any court of competent jurisdiction. Thus, the Prime Contract "otherwise provide[s]" an alternative to the Subcontract's requirement that any suit be brought in the county where the Project is located.

Defendants make several arguments for why the Prime Contract does not provide an additional forum for litigation of this action.

**A. "Provided Under"**

First, Defendants contend that the Prime Contract does not "provide" for an additional forum because the Prime Contract does not put any restrictions on where litigation can take place. (Defs.' Mot. to Dismiss at 4.) Defendants rely on the Merriam-Webster.com dictionary definition of "provide" as "To have as a condition; to stipulate; as, the contract provides that certain deadlines will be kept." (*Id.*) Thus, Defendants argue that because the Prime Contract "does not stipulate any requirements on a [c]ourt's jurisdiction over future claims . . . this dispute section

4

does not 'provide' an alternative forum." (*Id.*)

The Court finds Defendants' proffered definition to be too narrow. A more common understanding of "provide" is to simply offer or state something. One can, for example, "provide" an answer to a question, or "provide" a definition that may expand the meaning of a term. A provision of something does not necessarily require that the "something" be a restriction. Here, as read, the question is does the Prime Contract offer or state an additional forum; by stating that litigation can take place in a court of competent jurisdiction, the Prime Contract provides an alternative, even if that alternative is not as restrictive.

This broader reading is in line with Black's Law Dictionary, which defines "provided" as "[o]n the condition *or understanding* that." *Provided*, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added).[2] Again, an understanding does not necessarily require a restriction; a contract could easily state that a term will apply "with the understanding" that there are no other terms that provide an alternative, as is the case is here.

### B. Application of the "More Stringent" Procedures

Next, Defendants argue that the Subcontract's forum selection clause is meant to require that a lawsuit must be filed in the county the Project unless the Prime Contract requires a more stringent forum selection. (Defs.' Mot. to Dismiss at 5; Defs.' Reply at 3.) Defendants rely on § 6.3 of the Subcontract, which states: "If the dispute procedures in this Article 6 conflict with any dispute procedures in the Prime Contract, the shorter deadlines in regard to the submission of Claims, and the more stringent in regards to the compliance with Claim procedures, shall govern."

Section 6.3, however, requires that there is a conflict between the dispute procedures. As written, there is no conflict between the Subcontract's forum selection clause and the Prime Contract's provision of an additional forum. This is not a case where the Subcontract states that a lawsuit can be brought only in one forum while the Prime Contract states that a lawsuit must be brought in a different forum; instead, the Subcontract explicitly states that the lawsuit must be

---

[2] Likewise, Merriam-Webster defines "provided" as "on condition that : *with the understanding* : IF." *Provided*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/provided (last visited Sept. 7, 2018).

5

brought in the county where the Project is located *unless* the Prime Contract otherwise provides. In short, the Subcontract itself prioritizes the Prime Contract's dispute resolution requirements over the Subcontract's selection of a forum in the county where the Project is located.

Defendants argue that such an interpretation would always render the Subcontract's selection of a forum meaningless. (Defs.' Reply at 3.) The Court disagrees. If the Prime Contract was silent as to where a lawsuit could be brought, then the Subcontract's selection of a forum would be binding. It is only because the Prime Contract does permit a case to be brought in any court of competent jurisdiction, that the Subcontract's selection of a forum is superseded, as is required by the Subcontract's forum selection clause itself.

**C. "Claim"**

Third, Defendants argue that Plaintiffs are not bringing a "claim" as defined by the AIA Document because the AIA Document only recognizes a claim as "a demand or assertion by one of the parties." (Defs.' Mot. to Dismiss at 7.) Defendants contend that Plaintiff is not a party to the Prime Contract, and therefore the Prime Contract's dispute resolution procedures do not apply to this suit. (*Id.*) Plaintiff responds that the Prime Contract is incorporated into the Subcontract, such that the agreements should be considered and construed as one, relying on *Scott Co. of California v. U.S. Engineering Co.*, Case No. C 94-1963 FMS, 1994 WL 519493 (N.D. Cal. Sept. 19, 1994). (Plf.'s Opp'n at 7.)

In *Scott Co.*, the district court applied the California principle that there is incorporation by reference where "[t]he reference to the incorporated document is clear and unequivocal, and the terms of the incorporated document are known or easily available to the contracting parties," in considering whether the subcontract incorporated the forum selection clause from the main construction contract (the "Owner's Contract"). *Scott Co.*, 1994 WL 519493, at *2 (quoting *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748 (1994) (internal modifications and italics omitted)). The subcontract required the subcontractor to perform its work in accordance with the subcontract *and* the Owner's Contract, and further stated that the subcontract, first-tier subcontract, and the Owner's Contract were "incorporated herein and made a part of this Subcontract and are hereinafter referred to as the 'Contract Documents.'" *Id.* at *2. The Owner's

Contract also stated that the subcontractor would be bound to the contractor by the same terms and conditions by which the contractor was bound to the prime contractor. *Id.* The district court found that this language was a clear and unequivocal reference to the Owner's Contract, and sufficient to incorporate all of the Contract Documents into the subcontract. *Id.*

Significantly, the subcontractor then argued that the Owner's Contract's forum selection clause was not incorporated into the subcontract because the forum selection clause stated that it applied only to "any legal dispute arising hereunder" and "matters arising under or in connection with this Agreement," and that "this language restricts application of the forum selection clause to disputes arising under the prime contract." *Scott Co.*, 1994 WL 519493, at *4. The district court rejected this argument, explaining that "[u]nder California law, when one contract is incorporated into another, 'the original agreement and those referred to must be considered and construed as one.'" *Id.* (quoting *Holbrook v. Fazio*, 84 Cal. App. 2d 700, 701 (1948)). Thus, "[w]hen the forum selection clause is read as a part of the [s]ubcontract, 'This Agreement' refers to the [s]ubcontract," such that the forum selection clause applied." *Id.*

In their reply, Defendants do not appear to challenge the principles of *Scott Co.*, or its conclusion that where a contract is incorporated into another, both agreements should be construed as one such that the dispute resolution clause of a prime contract would apply to the parties who signed a subcontract. Instead, Defendants argue that in the instant case, there is no incorporation of the entire Prime Contract because the integration is limited by § 1.2 of the Subcontract, which states: "The Prime contract is incorporated in this Subcontract by reference, insofar as it relates in any way, directly or indirectly, to the Work." (Defs.' Reply at 4.) Defendants interpret "Work" as referring to the "scope of work" only. (*Id.*) Based on that limited integration, Defendants point to *John W. Johnson, Inc. v. Basic Construction Co.*, in which the D.C. Court of Appeals found that the subcontractor was not required to follow the prime contract's dispute procedures because the subcontract did not fully integrate the terms and conditions of the prime contract. 429 F.2d 764, 772 (D.C. Cir. 1970). There, the subcontract only stated that the subcontractor agreed to perform all work required by the prime contract for furnishing and painting, in accordance with the requirements of the prime contract documents. *Id.* at 774-75. The Court of Appeals explained

that while such terms incorporated the prime contract into the subcontract by reference, it was "for the limited purpose of specifying 'the work' to be performed." *Id.* at 775. The Court of Appeals further noted that the subcontractor had no rights under the prime contract. *Id.*

The Court finds that the instant case is distinguishable from *John W. Johnson, Inc.* because the Subcontract fully incorporates the Prime Contract beyond defining the scope of the work to be performed. Especially instructive is *Dynamic Drywall, Inc. v. Walton Construction Co.*, No. 06-1280-JTM, 2007 WL 164351 (D. Kan. Jan. 19, 2007). There, the district court found that the subcontract fully incorporated the prime contract, pointing out that § 1.1 of the subcontract "identifies as 'Subcontract Documents' both the subcontract itself and 'the Prime Contract, consisting of the Owner and Contractor and other Contract Documents enumerated therein;' and provides that those Subcontract Documents 'are fully a part of the Subcontract.'" *Id.* at *1. The subcontract also stated that the Subcontract Documents "'are as fully a part of the Subcontract as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the parties hereto . . . ." *Id.* Section 2.1 of the subcontract also stated that "[t]he Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract." *Id.* After reviewing those terms, the district court concluded that such language was very broad and represented a "complete incorporation and adoption by the subcontract of 'all rights, remedies and redress' provided in the Prime Contract." *Id.* at *2. While the subcontractor argued that the subcontract included language incorporating the duties only "insofar as applicable to this Subcontract," the district court found that "this language fails to restrict the general language of the agreement which incorporates all of the documents together [and] provides that [the contractor] shall have the same rights against [the subcontractor] as the Owner of the project should have against [the contractor]." Thus, the district court held that the incorporating language was very broad, comparing the case to *Scott Co.* to conclude that the prime contract's forum selection clause applied to the subcontractor.

8

Here, the Subcontract contains language that is precisely the same as that in *Dynamic Drywall, Inc.* Section 1.1 states that "[t]he Subcontract Documents consist of (1) this Agreement; (2) the Prime Contract," and other documents listed. Further, like *Dynamic Drywall,* § 1.1 goes on to state: "All of these documents form and constitute the 'Subcontract', and are as fully a part of this Agreement as if attached to this Agreement or repeated herein. The Subcontract represents the entire and integrated agreement between the Parties . . . ." Section 2.1 likewise provides that "[t]he Contractor shall have the benefit of all rights, remedies and redress against the Subcontractor which the Owner, under such documents, has against the Contractor, and the Subcontractor shall have the benefit of all rights, remedies and redress against the Contractor which the Contractor, under such documents, has against the Owner, insofar as applicable to this Subcontract." *Compare with Dynamic Drywall*, 2007 WL 164351, at *1; *Scott Co.*, 1994 WL 519493, at *2. Such language clearly shows that the Subcontract intended that the dispute provisions of the Prime Contract would apply between the subcontractor and the general contractor, as such provisions would fall under the "rights, remedies, and redress" that the subcontract expressly reserves for the parties.

Section 1.2 of the Subcontract, which Defendants rely on, is not contrary, nor does it limit the incorporation of the Prime Contract to the scope of work only. Notably, § 1.2 states that the term "Work" is further defined in Exhibit B. Exhibit B, in turn, discusses the "Scope of Work," which is shorthanded as "Scope," not "Work." (Subcontract, Exh. B ¶ I.) This demonstrates that the term "Work" is broader than just the scope of the work.

Because the Subcontract fully integrates and incorporates the Prime Contract, such that both must be "considered and construed as one," the Court finds that the Prime Contract's dispute resolution procedures would apply to the claim at issue, even if Plaintiff was not a signatory to the Prime Contract. *See Scott Co.*, 1994 WL 519493, at *4; *see also Boys Club of San Fernando Valley, Inc. v. Fidelity & Deposit Co.*, 6 Cal. App. 4th 1266, 1271-73 (1992) (concluding that "by the language in its bond incorporating the contract Fidelity intended, and agreed, to be bound by the arbitration provision in the contract even though it was not a party to the contract" where the bond had "expressly declare[d] that the contract is made a part of the bond and the terms of the

9

contract are incorporated into the bond").

### D. Mediation Requirement

Finally, Defendants argue that the Prime Contract's dispute resolution provision does not apply because the parties have not satisfied the mediation requirement. (Defs.' Mot. to Dismiss at 7; Defs.' Reply at 5.) Again, the Prime Contract sets out the manner of dispute resolution "[f]or any Claim subject to, but not resolved by mediation pursuant to Section 15.2 of AIA Document A201-2007." (Prime Contract § 13.2.) Section 15.2 of the AIA Document, in turn, states that where any Claim still exists following a Cool Down Period, "the parties agree to mediate such claim, dispute or other controversy, with such mediation to be held in the county where the Project is located, with the Parties sharing the cost of the mediator equally." Section 15.2 further states that "mediation shall be a condition precedent to litigation or arbitration."

Defendants contend that the Prime Contract's dispute resolution provision only applies if the parties satisfy the mediation requirement. (Defs.' Reply at 5.) The Court disagrees. Whether or not a claim is *subject* to mediation, as stated by the Prime Contract, is separate from whether the parties *actually* went to mediation before being able to file a lawsuit in any jurisdiction, as required by the AIA Document. Mediation is a condition precedent to litigating the case; it is not a condition precedent to whether the Prime Contract's dispute resolution applies in the first place. The fact that the claim at issue should have been mediated satisfies the Prime Contract's requirement that the claim is subject to mediation, and thus the Prime Contract provides an alternative forum to the Subcontract's selection of the county in which the Project is located.[3]

///
///
///
///
///
///

---

[3] This finding, however, would not necessarily preclude Defendants from moving to require that the case be mediated before it can proceed, as required by the AIA Document.

10

## IV. CONCLUSION

For the reasons stated above, the Court finds that the Prime Contract's dispute resolution procedure applies to the instant case, and DENIES Defendants' motion to dismiss.

IT IS SO ORDERED.

Dated: October 5, 2018

_____
KANDIS A. WESTMORE
United States Magistrate Judge